UNITED STATES of America, Plaintiff,

v.

ALUMINUM COMPANY OF AMERICA and Cupples Products Corporation, Defendants.

No. 61 C 147(2).

United States District Court
E. D. Missouri, E. D.

Aug. 9, 1966.

See also D.C., 34 F.R.D. 241.

---

1. The Deputy Commissioner found that the injury occurred "while performing the task of 'walking' a slab of copper * * *."

Lee Loevinger, Asst. Atty. Gen., Charles L. Whittinghill, and Edna Lingreen, Chief Counsel, U. S. Dept. of Justice, Washington, D. C., Joe E. Waters, Francis A. Kareken and James F. Buckley, Attys., Dept. of Justice, Washington, D. C., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for plaintiff.

Thos. S. McPheeters, Jr., Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., William K. Unverzagt, Pittsburgh, Pa., Herbert A. Bergson & Bergson & Borkland, Washington, D. C., Stuart Symington, Jr., St. Louis, Mo., for defendants.

## MEMORANDUM

MEREDITH, District Judge.

This matter is pending on the proposed plan of Aluminum Company of America (hereinafter called Alcoa) to divest itself of Cupples Products Corporation (hereinafter called old Cupples). Plaintiff objects to the proposed sale. The parties have conferred and have failed to reach agreement. The Court has been duly advised by testimony and briefs. The plan of divestiture of Cupples by Alcoa as submitted in the original plan filed with the Court and amended by later memorandum and by oral testimony is substantially as follows:

Charles C. Moran and Roger E. Lord, Jr., propose to form a new corporation (hereinafter referred to as new Cupples)` with 150,000 shares of stock to be sold for $1.00 per share. Lord and Moran will purchase 105,000 shares for $105,000; Alcoa will purchase 45,000 shares of the new Cupples for $45,000. New Cupples` will purchase from Alcoa all of the assets of old Cupples, except the real estate located at Dowagiac, Michigan, the real estate and equipment located at Corona, California, and accounts receivable. The purchase price will be computed as follows: $3,750,000 for fixed assets, plus

inventory, plus $400,000, minus current liabilities. The total purchase price will be approximately $6,200,000. It will be paid for by $150,000 in cash (the capital of new Cupples), plus a fixed asset note of $3,750,000, plus a current asset note of approximately $2,300,000. The notes will bear interest at the rate of 6% per annum or 120% of prime, whichever is lower, and will be payable over a ten-year period. Alcoa agrees, in addition to financing the purchase price as hereinbefore stated, to provide financing up to a total of $12,000,000 during the ten-year period in order to finance new construction and provide additional working capital. The rate of interest on the $12,000,-000 will be 6% per annum or 120% of prime, whichever is the lower.

Lord and Moran are the principal officers of old Cupples and were instrumental in starting this corporation, which was purchased by Alcoa, which purchase resulted in this suit being brought. Both Lord and Moran own a substantial amount of Alcoa stock, which they received in exchange for their shares of stock in old Cupples.

Alcoa agrees to have the directors of new Cupples chosen subject to the approval of the Court. It proposes to have its 30% stock interest in new Cupples essentially non-voting and to be held by a trustee chosen subject to court approval. Alcoa and Lord and Moran estimate that the total indebtedness to Alcoa will be paid off during the ten-year period and at the end of this time Alcoa proposes to sell its 30% stock interest in new Cupples to a purchaser to be approved by the Court. Alcoa estimates that its loss to date on old Cupples has been approximately $8,000,000, and it hopes to recoup $3,000,000 of this loss at the time it sells its stock. Lord and Moran testified they intend to give options of approximately half of their 70% interest to the key people in the new Cupples organization. Alcoa agrees to guarantee any bank loans which new Cupples may require during the ten-year period and the First National Bank in St. Louis has agreed to loan $2,-000,000 to new Cupples at 6% per annum

or 120% of prime, whichever is the lower. An officer of the First National Bank testified the Bank would make this loan only if guaranteed by Alcoa.

Neither Moran nor Lord would have any personal liability on the purchase of old Cupples' assets, and their total investment in new Cupples would be the $105,000 stock interest. The two of them plan to take out of the new Cupples $100,000 annually as salary. Therefore, after the first year, their net loss in new Cupples would be $5,000 in the event it failed. Moran and Lord and the executive officer of Alcoa all testified that during the ten-year period of repayment of the notes, new Cupples would be completely free to purchase aluminum from anyone it desired and the company would be run in the manner which was most advantageous to new Cupples to make it completely independent.

Moran and Lord have made no effort to enlist any new capital in their venture and during the ten-year payoff period, it appears to the Court that they will be totally and completely subservient to Alcoa.

While the testimony indicated that old Cupples had a substantial backlog of orders and it expected annual sales of $20,000,000 or more on which it anticipated making an eight percent profit, or $1,600,000 per year, the interest payments on $12,000,000 at 6% per annum amount to $720,000 annually. This is an extremely heavy burden for a company with capital of $150,000. Lord, Moran and Alcoa blame the tight money market on their failure to enlist additional capital in the new Cupples and the failure to find financing from any source other than Alcoa. There is no question that the present money market is very tight. However, based on the past record of performance by Moran and Lord of the old Cupples prior to its acquisition by Alcoa (they ran an $80,000 investment into a $7,000,000 company), it would seem to the Court that if they so desired, they could enlist partners in their new venture who had sufficient capital to put them in an independent position.

The testimony in behalf of Alcoa indicated that many inquiries have been received by Alcoa to purchase Cupples and only two of the inquiries, other than the present proposed purchaser, have been followed up and these were corporations in the same field as Cupples. Alcoa, after considering the antitrust consequences of purchase by either of these two corporations, felt reasonably sure the Court would not approve such a purchase.

The Court is of the opinion that Alcoa should explore the possibility of other purchasers who have sufficient capital to operate Cupples without relying completely on Alcoa for financing and who will be able, should adverse business circumstances arise, to weather any economic storms that may come and who may be interested in purchasing not only the plant in St. Louis, but also the plant in Dowagiac, Michigan, and Corona, California.

The proposed plan of divestiture by Alcoa does not provide the machinery for an independent Cupples and does not comply with the final judgment of this Court, nor does it comply with the plan of divestiture heretofore approved by the Court. Accordingly, an order will be entered disapproving the plan.